# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No.

| | |
|---|---|
| KECHA PARTINGER, | |
| Plaintiff, | **COMPLAINT** |
| v. | |
| KRISPY KREME DOUGHNUT CORP., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Kecha Partinger ("Plaintiff") brings this action against Defendant Krispy Kreme Doughnut Corporation ("Krispy Kreme" or "Defendant") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and for violation of North Carolina public policies.

## PARTIES

1.      Plaintiff is an African American adult female and at all relevant times resided in Charlotte, North Carolina.

2.      Defendant is an entity formed under the laws of North Carolina, with Defendant's principal office located at 370 Knollwood Street, Suite 500, Winston-Salem, North Carolina 27103. Defendant employed Plaintiff during the events giving rise to this action.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under Title VII, because the claims arise under the laws of the United States.

1

4. This Court has personal jurisdiction over Defendant because Defendant conducts business in Charlotte, North Carolina, which is located within this judicial district.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was hired to work in this district and Defendant conducts business in this district.

## ADMINISTRATIVE EXHAUSTION

6. Plaintiff timely filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and retaliation.

7. Plaintiff filed her charge with the EEOC on September 20, 2024.

8. The EEOC issued a Notice of Right to Sue on April 7, 2025.

## GENERAL ALLEGATIONS

9. Plaintiff is a member of a protected class, specifically African American.

10. On July 22, 2022, Plaintiff was hired as a lease administrator by Defendant.

11. Plaintiff took the job from Defendant with the understanding that she would be able to work from home indefinitely.

12. Up until November of 2023, Plaintiff consistently worked from home.

13. In November 2023, Plaintiff raised a concern to Plaintiff's manager, Patrick McIntyre ("McIntyre"), regarding how she was being treated at work. McIntyre is Caucasian.

14. Shortly thereafter, McIntyre singled Plaintiff out by requesting that she work on site on Mondays so that her colleagues could see her in person.

15. Despite Plaintiff's clearly communicated transportation constraints and original understanding of her role, she complied with the request after McIntyre's continuous insistence.

16.     Thereafter, when Plaintiff worked from home, McIntyre demanded that Plaintiff turn on her video camera during remote meetings.

17.     Caucasian employees working in comparable roles and similar situations were permitted to leave their cameras off.

18.     On November 15, 2023, McIntyre informed Plaintiff that she would be required to turn on her camera for all future meetings.

19.     Plaintiff contacted McIntyre with her concerns about the change, noting that Caucasian employees were permitted to attend meetings with their cameras off.

20.     McIntyre dismissed Plaintiff's concerns. He stated that he would henceforth require her to come into the office every day, and that she would no longer be permitted to work remotely at all.

21.     Caucasian employees were permitted to continue working from home.

22.     Following McIntyre's demands, Plaintiff complained of race discrimination and retaliation to Human Resources ("HR").

23.     McIntyre and Jeff Evans ("Evans"), an HR representative, met with Plaintiff to inform her that termination was possible if she did not comply with McIntyre's demand that she now come into the office every day.

24.     On November 20, 2023, McIntyre asked Plaintiff to submit her resignation letter. She refused.

25.     On March 7, 2024, Plaintiff received negative feedback from McIntyre during her annual performance review. McIntyre cited Plaintiff's "preference for not appearing on camera" as a key reason for said feedback.

26.     Upon information and belief, Caucasian employees did not receive negative performance feedback for failing to turn on their cameras.

27.     McIntyre informed Plaintiff that her performance increase was at the discretion of HR.

28.     Upon reaching out to HR, Plaintiff was informed that her performance increase had been cut at McIntyre's request via email.

29.     On June 7, 2024, McIntyre sent a letter to vendors informing them that all future lease administration matters should be directed to CRBE, Inc.

30.     On June 10, 2024, Plaintiff received a call from McIntyre informing her that her role as a lease administrator was being eliminated.

31.     However, JoAnne Offhaus' role, another lease administrator for Defendant, was not eliminated.  Offhaus is Caucasian and currently remains employed with Defendant as a lease administrator.

32.     Plaintiff's responsibilities were subsequently taken over by Ashley Abts, a Caucasian woman.

33.     Plaintiff therefore believes and avers that Defendant discriminated and retaliated against her due to her race and/or for complaining of race discrimination.

**FIRST CLAIM FOR RELIEF**
**Discrimination and Retaliation on the Basis of Race**
**Violation of 42 U.S.C. § 2000, et seq.**

34.     The foregoing paragraphs are incorporated herein by reference.

35.     At all times relevant to this action, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

4

36.     At all relevant times herein, Defendant employed at least 15 employees at all relevant times and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

37.     In doing the acts alleged above and herein, Defendant discriminated against Plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.

38.     Defendant's discriminatory actions included, but were not limited to (1) singling Plaintiff out for disparate and harsher treatment because of her race; (2) removing or limiting her assigned duties; (3) denying her pay increases; and (4) discharging Plaintiff based on her race.

39.     Defendant retaliated against Plaintiff because she made complaints of unlawful race discrimination by removing or limiting her assigned duties, denying her a performance increase, and, ultimately, terminating her employment.

40.     As a direct and proximate result of said conduct, Plaintiff has suffered lost past and future wages and job benefits and has suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

41.     Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of the Defendant's conduct, Plaintiff is entitled to recover punitive damages.

42.     The foregoing paragraphs are incorporated herein by reference.

43.     Section 1981 states that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

44.      For purposes of Section 1981, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

45.     42 U.S.C. § 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suite in equity, or other proper proceeding for redress …."

46.     As an African American, the Plaintiff is a member of a protected class of individuals protected from unlawful employment discrimination by 42 U.S.C. § 1981.

47.     Plaintiff's employment relationship with Defendant may be deemed a contractual one for purposes of Section 1981.

48.     Defendant intended to discriminate based on race and the interference with a contractual interest based on that discrimination.

6

49.     Defendant deprived Plaintiff of her right to be free of racial discrimination in the terms and conditions of her employment.

50.     But for Plaintiff's race, Defendant would not have treated Plaintiff disparately with regard to appearing on camera, working in the office, receiving a pay increase and/or would not have terminated Plaintiff.

51.     No legitimate, race-neutral reason explains Defendant's decision to terminate Plaintiff. Defendant did not treat similarly situated Caucasian employees in the same manner.

52.     Defendant's violation of Section 1981 was willful.

53.     Defendant is liable to Plaintiff for all damages arising from Defendant's violation of Section 1981, in an amount to be determined at trial.

54.     Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of the Defendant's conduct, Plaintiff is entitled to recover punitive damages.

55.     Plaintiff is also entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 1988(b).

## COUNT III
### Wrongful Discharge in Violation of Public Policy

56.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

57.     Defendant employed at least fifteen (15) employees at all relevant times.

58.     Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1, et seq. by terminating Plaintiff because of Plaintiff's race, African American.

7

59.     Defendant violated the public policy of North Carolina as set forth in N.C.G.S. §
143-422.1, et seq. by terminating Plaintiff in retaliation because of Plaintiff's complaint that she
was being discriminated against because of her race.

60.     As an actual, proximate, and foreseeable consequence of Defendant's conduct,
Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other
damages and is entitled to recover compensatory damages in an amount to be determined at trial.

61.     Defendant's actions were done maliciously, willfully or wantonly, and in a manner
that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct,
Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

62.     Defendant's officers, directors, and managers participated in and condoned the
malicious, willful, wanton, and reckless conduct alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor
and grant her the following relief:

1.     An Order awarding Plaintiff damages for Defendant's violation of Title VII of the
Civil Rights Act of 1964, including backpay, lost wages, employment benefits, and any other
compensation denied or lost because of Defendant's violation of Title VII of the Civil Rights Act
of 1964;

2.     An Order awarding Plaintiff compensatory damages for emotional distress, pain
and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

3.     An Order awarding Plaintiff punitive damages;

4.     An Order awarding Plaintiff punitive damages under N.C. Gen. Stat. § 1D-115 in
an amount to be proven at trial;

8

5.     An Order awarding Plaintiff the costs of this action;

6.     An Order awarding Plaintiff reasonable attorneys' fees;

7.     An Order awarding Plaintiff pre-judgment and post-judgment interest at the
highest rates allowed by law; and

8.     An Order granting any other necessary or appropriate relief to which Plaintiff is
entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (844) 437-7637; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiff*